UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTONIO TORRES, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  3:23-CV-2765-X |
| | § | |
| JEREMIAH CECIL BYOUS, | § | |
| | § | |
| *Defendant*. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Jeremiah Cecil Byous's motion for summary judgment.  (Doc. 32).  Having considered the parties' briefs and the evidence presented, the Court **GRANTS** the motion and **DISMISSES** all claims.  A final judgment will follow.

### I. Factual Background

This is a qualified immunity case.  Officer Byous, an officer with the Dallas Police Department, was on patrol near a house with a known history as a hub for automobile thieves.  Officer Byous noticed a Dodge Ram that was new to the area, which indicated to Officer Byous that it might be stolen.  In his experience, it was commonplace for new vehicles in the area to be stolen.  Additionally, the Dodge Ram had an expired tag, which also indicated it might be stolen.

Officer Byous saw the Dodge Ram pull out of a driveway and drive quickly toward Officer Byous.  Then Torres, who was driving the Dodge Ram, "spun out and

1

fishtailed"¹ the truck before pulling into the neighboring driveway. Officer Byous then stopped Torres and asked him what he was doing, and Torres said he was going to talk to some friends. Officer Byous responded that Torres didn't have friends there and began to place handcuffs on Torres when Torres took off running. When Torres took off, Officer Byous chased after him along what appears from the bodycam footage to be a two-way residential street. During the chase, Torres tipped over a trashcan in front of Officer Byous, over which Officer Byous tripped, tumbled, and hurt his knee. Undeterred, Officer Byous picked himself back up and continued the chase into a neighbor's front yard. While in the yard, Torres came upon a chain link fence, and turned around. Officer Byous tackled and struck Torres twice in the head with his hand. Importantly, Officer Byous never released the handcuffs, and they were still in his hand when he struck Torres. Torres was bleeding from the head and was arrested. This suit followed.

## II. Legal Standards

District courts must grant summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."² A dispute "is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party."³

---

¹ Doc. 34 at App. 1.

² Fed. R. Civ. P. 56(a).

³ *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000) (cleaned up).

## III. Analysis

Qualified immunity involves two questions.[4] "The first question is whether the officer violated a constitutional right. The second question is whether the right at issue was clearly established at the time of the alleged misconduct."[5] If the answer to either question is wrong, the officer retains qualified immunity and the Court's inquiry need not proceed further.[6] Because the Court can resolve the motion solely on the second question, the Court focuses only on the "Clearly Established" question.

Qualified immunity's second prong "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances . . . was held to have violated the Constitution."[7] "A right is 'clearly established' only if preexisting precedent 'ha[s] placed the . . . constitutional question beyond debate.'"[8] That burden is "heavy."[9] "[A]s the Supreme Court has repeatedly admonished lower courts, we must define [the] constitutional question with specificity."[10] "The dispositive question is whether the violative nature of *particular* conduct is clearly established."[11]

---

[4] Both sides make evidentiary objections in their briefing. Because the Court need not rely on any of the contested evidence in a contested manner, the Court overrules the objections as moot.

[5] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (cleaned up).

[6] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

[7] *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up).

[8] *Harmon v. City of Arlington*, 16 F.4th 1159, 1165 (5th Cir. 2021) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[9] *Id.*

[10] *Id.* at 1166 (collecting cases).

[11] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (cleaned up).

"[O]vercoming qualified immunity is especially difficult in excessive-force cases."[12] "The specificity requirement assumes special significance in excessive force cases, where officers must make split-second decisions to use force."[13] "[P]olice officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue."[14] "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[15] "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law."[16] And it is "the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality."[17] Finally, the Court views the facts of this case in light of the bodycam footage of the event.[18]

Torres cites numerous cases that he argues clearly establish that his rights were violated.[19] For the reasons laid out below, the Court concludes that Torres' rights were not clearly established.

---

[12] *Morrow*, 917 F.3d at 876.

[13] *Harmon*, 16 F.4th at 1166.

[14] *Kislea v. Hughes*, 584 U.S. 100, 104 (2018) (cleaned up).

[15] *Mullenix*, 577 U.S. at 11 (cleaned up).

[16] *Id.* at 12 (cleaned up).

[17] *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (cleaned up).

[18] *Tucker v. City of Shreveport*, 998 F.3d 165, 170 (5th Cir. 2021).

[19] *Id.* at 20–25.

Two of the cases cited by Torres involved fleeing suspects: *Joseph ex el. Estate of Joseph v. Bartlett*[20] and *Cooper v. Brown*.[21] *Bartlett* sprung from the death of a schizophrenic man after he was seen behaving strangely near a school.[22] The man "endured twenty-six blunt-force injuries to his face, chest, back, extremities, scrotum, and testes" from the officers who subdued him and he later died from his injuries.[23] He "was not suspected of committing any crime, was in the fetal position, and was not actively resisting."[24] The Court held that the officers were not entitled to qualified immunity at the motion for summary judgment stage.[25]

The Court in *Cooper* found the officer's use of force objectively unreasonable.[26] That case involved a man who was pulled over on suspicion of driving under the influence, fled from the officer, and was discovered by a police dog.[27] The dog bit Cooper, but the officers allowed the dog to continue biting the plaintiff "for one to two minutes" while the officers were handcuffing the suspect—he did not re-attempt to flee.[28] Because of the encounter with the police dog, the plaintiff "suffered years of severe pain" and underwent "multiple surgeries."[29]

---

[20] 981 F.3d 319 (5th Cir. 2020).

[21] 844 F.3d 517 (5th Cir. 2016).

[22] 981 F.3d at 326.

[23] *Id.* at 327–28.

[24] *Id.* at 336 (internal footnote omitted).

[25] *Id.* at 346.

[26] 844 F.3d at 524.

[27] *Id.* at 521.

[28] *Id.*

[29] *Id.*

Whatever similarities *Bartlett* and *Cooper* have with this case, the severity of force used by the officers is significantly higher in both cases—both in quantity and duration. Torres was struck on the head twice in quick succession, while the plaintiffs in these two cases were (1) struck over two dozen times by several officers so badly that he died and (2) bitten for an extended period by a police dog. As a result, Torres fails the qualified immunity's specificity requirement with these two cases.

Torres cites several additional cases. Three of those cases bear a striking resemblance to one another: they all involve altercations with police at the plaintiff's vehicle in which the suspect was either peaceful or minimally resistant and where the plaintiff had not fled.[30]

In *Bagley v. Guillen*, the plaintiff was tased by an officer after being "pulled over for . . . a minor traffic violation."[31] The plaintiff generally complied with the officer's verbal commands and did not physically resist arrest.[32] The Court there denied qualified immunity at the summary judgment stage as the plaintiff had presented enough evidence of excessive force.[33]

In *Newman v. Guedry*, the suspect exited his vehicle and had some sort of pat-down that, in the light most favorable to the plaintiff, involved the officer shoving him and never gave him commands.[34] One officer then struck the plaintiff with a

---

[30] *Bagley v. Guillen*, 90 F.4th 799 (5th Cir. 2024); *Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012); *Vardeman v. City of Houston*, 55 F.4th 1045 (5th Cir. 2022).

[31] 90 F.4th at 803–04.

[32] *Id.* at 801–02.

[33] *Id.* at 803.

[34] 703 F.3d at 760.

6

baton "a total of thirteen times in about nine seconds,", "during which, [the plaintiff] alleges, neither officer gave him any command with which he failed to comply."[35] Then another officer tased the suspect three times and the altercation ended.[36] There, the Court held that the officers' use of force was objectively unreasonable.[37]

*Vardeman v. City of Houston* involved a man picking up his family from an airport.[38] An officer told him to move his car, which he did not because his family was nearby.[39] After loading his family's luggage, another officer approached and yelled at the man to move his car, at which point his adult daughter tried to step between them.[40] The officer then pushed her away and punched the man in the face, knocking him over.[41] There, the Court held that the district court erred in granting judgment on the pleadings to the officer when, if supported by evidence, the episode would constitute excessive force.[42]

Each of these cases involves very difference factual scenarios and contexts for the force. Most notably, none of the plaintiffs in *Vardeman*, *Bagley*, or *Newman* was actively resisting or had recently done so. Torres' behavior was quite different, resisting arrest and then trying to escape Officer Byous until realizing he was cornered just before Officer Byous reached him. Even if Torres was surrendering

---

[35] *Id.*

[36] *Id.*

[37] *Id.* at 763.

[38] 55 F.4th at 1048.

[39] *Id.*

[40] *Id.* at 1049.

[41] *Id.*

[42] *Id.* at 1052.

7

when Officer Byous reached him, these cases are too factually different to meet the clearly established standard.

The final case Torres cites involves no fleeing or a vehicle, but it still offers Torres no support. In *Curran v. Aleshire*, an officer "slammed" the head of "a 15-year-old sophomore" into a wall after she refused to give her phone to a schoolteacher.[43] There was a factual dispute about whether the student was resisting, and "she was not attempting to flee, [the officer] did not fear for his own safety, and no bystander was endangered by her behavior."[44] The student was convicted of battering the officer, but that did not automatically render his use of force as valid—there was "a fact dispute concerning whether the battery and the first use of force were temporally disconnected."[45] Given the outstanding material factual disputes, the Court dismissed for want of jurisdiction.[46]

Once again, this case lacks the necessary specificity to overcome qualified immunity. True, there was a time lapse between Officer Byous being knocked over by the trash can Torres threw in his way and the subsequent altercation between the two men, and Torres rightly points that out in his brief.[47] However, that is all the two cases have in common. Unlike the 15-year-old plaintiff in *Curran*, Torres indisputably actively resisted arrest and fled. His altercation with Officer Byous

---

[43] 800 F.3d 656, 658 (5th Cir. 2015).

[44] *Id.* at 662.

[45] *Id.* at 663.

[46] *Id.* at 657–58.

[47] Doc. 40 at 22.

8

occurred at the end of the foot chase. The facts are simply too different for *Curran* to be proper precedent on the clearly established prong.

It is true that, "in an obvious case," qualified immunity can be defeated without "a body of relevant case law."[48] However, "they are so rare that the Supreme Court has *never* identified one in the context of excessive force."[49] This is not that rare case that is so "obvious" that does not need specific case law support. As a result, in following Fifth Circuit and Supreme Court instruction to define a clearly established law with specificity, Torres has not met his burden under the clearly established standard.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the motion and **DISMISSES** all claims. A final judgment will follow.

**IT IS SO ORDERED** this 15th day of August, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[48] *Brosseau v. Hagen*, 543 U.S. 194, 199 (2004).

[49] *Harmon*, 16 F.4th at 1167 (emphasis in original).